UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Julie Machie,

    Plaintiff,

v.

Detroit Library Commission, a/k/a
Detroit Public Library, an independent
municipal corporation; Russell Bellant,
in his individual and official capacity as
Commissioner of the Detroit Public
Library Commission, Georgia Hill, in her
individual And official capacity as
former Commissioner and President of
the Detroit Public Library Commission,
jointly and severally,

    Defendants.
_____/

Case No. 12-15299

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [41]**

Currently before the Court is Defendants' motion for summary judgment. Plaintiff's complaint raises claims of national origin discrimination in employment. For the reasons set forth below, the Court GRANTS Defendants' motion for summary judgment and hereby DISMISSES Plaintiff's complaint with prejudice.

**I.    FACTS**

Plaintiff, Julie Machie, is from Nigeria and is currently the Deputy Director of the Detroit Public Library ("DPL"). Plaintiff brought this lawsuit against the Detroit Library Commission ("the Commission") and Russell Bellant and Georgia Hill, both in their

individual and official capacities as Commissioner and former Commissioner, respectively, of the Detroit Library Commission alleging employment discrimination based on Plaintiff's national origin.

The Detroit Library Commission is a municipal corporation created by state legislative action. See Defs.' Ex. F. The primary purpose of the Commission is to set the policies for the DPL, including appointing the Library's Executive Director and setting the salaries for the Executive Director and the Administrative Staff.

Plaintiff is an experienced and well-qualified library administrator. Prior to her current position with the DPL she held a more junior position there. In 2005, after leaving the DPL for a job in Austin, Texas, Plaintiff was contacted by the DPL and invited to return as Deputy Director on a three-year contract. Plaintiff claims that this invitation included a promise that when the then-current Executive Director retired, Plaintiff would be named her successor. Plaintiff moved back to Detroit and accepted the position.

In 2008, when the then-current Executive Director, Nancy Skowronski announced her intent to retire, DPL decided to hire Boulware & Associates to conduct a search for a replacement. Plaintiff was not pleased as she was under the impression that she would simply succeed Ms. Skowronski, as succession has allegedly been the practice at the DPL for over a century. Nonetheless Plaintiff applied for the position and was eventually included in the list of finalists.

On January 29, 2009 Plaintiff met Christine Boulware, the CEO of the search firm retained by the Commission. During that meeting, Plaintiff alleges that Boulware questioned her extensively about her Nigerian origin and her accent.

2

On April 21, 2009 the Commission renewed Plaintiff's three-year contract as the Deputy Director.

On May 22, 2009 the Commission voted four votes to three to appoint JoAnne Mondowney as Executive Director. The three votes not for Ms. Mondowney were all for Plaintiff. On May 28, 2009 Plaintiff sent an email to the Commission explaining that Ms. Boulware questioned her about her national origin, and expressing concerns that such inappropriate questioning is what led to her losing the Executive Directorship appointment. On June 2, 2009 the Commission met with Boulware in a closed session, after which all of the commissioners were satisfied that the search process was not tainted. Thereafter, the Commission moved forward with the appointment of Ms. Mondowney as Executive Director.

In April of 2011, one year before the end of Plaintiff's renewed three-year contract, the Commission notified Plaintiff, per the terms of her contract, that it did not intend to renew the contract, and instead would keep Plaintiff on as an at-will employee. Specifically, Plaintiff's contract states that "[t]he Commission may renew this contract with the Deputy Director under the same or modified terms, or shall give one-year notification to the Deputy Director of its intent not to renew." Pl.'s Ex. 3, Employment Contract. The contract also provides that in the absence of the Director, Plaintiff "shall be authorized to act in her stead." *Id.*

Plaintiff is on record telling an Ohio based newspaper that the Commission's decision to not renew her contract was based on "budget reductions and pay cuts for all staff." Defs.' Ex. E., p 2.

3

Plaintiff filed this lawsuit on December 3, 2012 alleging various federal and state civil rights causes of action, and this Court dismissed the state law claims, leaving only Counts I and II alleging violations of 42 U.S.C. §§ 1983 and 1981 respectively.

## II. Analysis

### A. The Standard on Motion for Summary Judgment

The Sixth Circuit employs the familiar standard for summary judgment, namely, that summary judgment is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." *U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotation marks omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Moreover, "[i]n order to survive a motion for summary judgment, the non-moving party must be able to show 'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of*

4

*Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (citing and quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### B. Plaintiff's Failure to Promote Claims are Time Barred

Plaintiff alleges that the Commission and Defendants Bellant and Hill are liable under 42 U.S.C. § 1983 for the failure to promote her to the position of Executive Director based on her national origin. The Sixth Circuit has held that the statute of limitations on a § 1983 claim must be established by reference to state law, and that in Michigan such a claim must be brought within three years. *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (describing the system for borrowing from state law to establish the statute of limitations on § 1983 claims and stating that "[w]e have held that the appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims."). Furthermore, "the standard rule in this circuit, [is] that the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Harrison v. Michigan*, 722 F.3d 768, 773 (6th Cir. 2013) cert. denied, 134 S. Ct. 1023, 188 L. Ed. 2d 119 (U.S. 2014)

Here, it is undisputed that Plaintiff knew by June 2, 2009 that the Commission was aware of Boulware's allegedly improper questioning, and armed with that knowledge still decided to promote another candidate to Executive Director. Seeing as Plaintiff herself was subjected to the questioning about her national origin, that Plaintiff herself brought the questioning to the Commission's attention, and that Plaintiff knew that she was not being chosen for the position of Executive Director, there can be no doubt that Plaintiff was aware that "the act providing the basis of...her injury ha[d] occurred." *Id.* As June 2, 2009 is the

5

date on which the Commission made their decision to move forward with its choice for Executive Director despite Plaintiff's complaints, that is the latest date when Plaintiff should have reasonably known of the act providing the basis of her injury occurred. Plaintiff argues for equitable tolling of the statute of limitations, claiming that the Commission never formally responded to her email regarding Boulware's questions. However, the Commission's decision to hire Mondowney after it received Plaintiff's email was a public decision, and the Commission's actions should have communicated to Plaintiff that the Commission was not going to change its plans on account of her claims. As such, the Plaintiff is not entitled to equitable tolling, as there is nothing on the record to support a claim that Defendants somehow prevented Plaintiff from learning of the acts that provide the basis for her injury. Indeed, those acts were in large part made publicly.

In light of the foregoing, Plaintiff's claim must have been brought by June 2, 2012 in order to be timely. Plaintiff's complaint was not filed until December 3, 2012, a full six months late. As such, the Court GRANTS Defendants' motion as to Plaintiff's § 1983 claims arising from the fact she was not named Executive Director of the DPL and DISMISSES those claims.

The Court notes that even if Plaintiff's claim was not time barred, she does not point to sufficient evidence in the record to support her claim and Defendants would still be entitled to summary judgment. In fact, in much of her response brief, she cites to allegations from the complaint and her own deposition testimony. As noted above, Plaintiff must be able to show "sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Arendale*, 519 F.3d at 605.

Plaintiff's reliance on her complaint and a scant amount of evidence is not sufficiently probative to avoid the realm of speculation.

### C. There Is No Genuine Dispute as to a Material Fact with Respect to Plaintiff's Remaining 42 U.S.C. § 1983 Claims

Plaintiff's remaining Count I claims relate to the non-renewal of her three-year contract. As noted above, the contract in question specifically provides for DPL to elect not to renew the contract by providing one year notice of its intent not to renew, which is exactly what DPL did. Moreover, Plaintiff's employment was not terminated, it was simply modified to at-will status at the end of the three-year term.

Seeing as Plaintiff has not cogently articulated a theory of recovery for this claim nor has she pointed to evidence sufficient to support the two most likely theories of recovery for Defendants' decision not to renew her contract - as they had the right to do under said contract - the Court must grant Defendants' motion on this issue. The Court also notes that the undisputed facts show that Defendant Hill was not even a member of the Commission at the time that Plaintiff was notified of the Commission's decision not to renew, and as such, Defendant Hill should never have been included in this claim at all. Additionally, Plaintiff is quoted in a newspaper saying that the non-renewal of her contract was motivated by a tight budget at the DPL. Seeing as that is, practically speaking, the only evidence on record relating to the motivation for the Commission's non-renewal, Plaintiff's own remarks severely undercut her position in this case.

As Defendants note, Plaintiff points to the allegations in her complaint in support of her response to Defendants' Rule 56 motion for summary judgment. Plaintiff also cites largely to a case from the Northern District of Ohio in support of her position, however that

7

case dealt with a motion to dismiss under Rule 12(b)(6). As this is a Rule 56 motion for summary judgement and not a Rule 12(b)(6) motion to dismiss, Plaintiff's reliance on the allegations in her complaint at this stage of the litigation will not suffice, nor will reference to a district court opinion addressing a Rule 12(b)(6) motion.

A close reading of Plaintiff's complaint and response papers reveals, broadly speaking, a procedural due process claim and an equal protection claim allegedly arising out of the Commission's decision not to renew the contract. As do the due process claim, despite her vague arguments to the contrary, Plaintiff does not have cognizable property right in her job sufficient to create a due process claim under the Fourteenth Amendment. The Sixth Circuit has held that:

> Government employment amounts to a protected property interest when the employee is "entitled" to continued employment. Neither mere government employment nor an abstract need or desire for continued employment will give rise to a property interest. Rather, a property interest exists and its boundaries are defined by rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Bailey v. Floyd Cnty. Bd. of Educ. By & Through Towler*, 106 F.3d 135, 141 (6th Cir. 1997) (internal citations and quotation marks omitted).

Here, the independent source that defines Plaintiff's "entitlement to continued employment" is the employment contract. That contract sets forth the procedures for both parties regarding renewal, termination, and election not to renew. It is undisputed that Defendants adhered to the letter of the contract when they communicated the Commission's intent not to renew the contract, but to instead keep Plaintiff on as an at-will employee. Defendants did not breach the contract and strip Plaintiff of her rights thereunder, rather, they exercised *their* rights under the contract not to renew.

8

As noted above, the contract also provides that in the absence of the Director, Plaintiff "shall be authorized to act in his/her stead." *Id.* To the extent Plaintiff is arguing that this language somehow indicates that the Commission intended Plaintiff to succeed the Executive Director upon retirement and that she therefore had a right to "continued employment," Plaintiff is mistaken.[1] The plain language of the contract in no way suggests that the parties intended to include a right in Plaintiff to succeed to the Executive Directorship. The language that Plaintiff points to is clearly intended to ensure continued operation of the DPL in the event that the Executive Director is absent. The contract provides that Plaintiff may act in the Director's "stead." As used in the contract, "stead" means "the office, place, or function ordinarily occupied or carried out by someone or something else." Merriam-Webster Unabridged Dictionary, *available at* http://unabridged.merriam-webster.com/unabridged/stead. The key part of that definition is "ordinarily occupied or carried out by someone...else." Working in the Director's stead is distinct from becoming the Director, as the Director would be the "someone" who ordinarily carries out the duties, in whose *stead* Plaintiff is entitled to work. Plaintiff's argument on this issue, therefore, is misplaced. There can be no finding of a violation of Plaintiff's procedural due process rights on the record before the Court.

Plaintiff's equal protection claim also fails. First, as noted above, there is uncontested evidence that Defendant Hill was not a member of the Commission when the decision to not renew Plaintiff's contract was made. As such, no equal protection claim can be sustained against Defendant Hill. Second, in order to maintain such a claim against the

---

[1] The Court notes that the standard here is an awkward fit, as Plaintiff continues to be employed at the DPL.

9

Commission Plaintiff must show that her alleged constitutional injury is the result of "official policies or established customs" at the DPL. *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). Furthermore, she must establish "a direct causal link between the policy and the alleged constitutional violation" such that the DPL's "deliberate conduct can be deemed the moving force behind the violation." *Id.* There is nothing in the record that supports such a showing, and as noted above, Plaintiff's reliance on the allegations in her complaint is neither a sufficient nor appropriate response to a motion for summary judgment under Federal Rule of Civil Procedure 56.

Finally, there is nothing in the record that shows that Defendant Bellant did anything whatsoever to influence the Commission's vote not to renew Plaintiff's contract, let alone that he did so out of an impermissible bias against Nigerians. The evidence shows that the Commission voted to not renew Plaintiff's contract along with a similar contract of another DPL employee as was their right under the contract, nothing more.

As such, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's remaining 41 U.S.C. § 1983 claims and hereby DISMISSES those claims.

### D. Plaintiff's 42 U.S.C. § 1981 Claims Fail as a Matter of Law

The law is clear that there is no private cause of action against governmental actors in their individual or official capacity under 42 U.S.C. § 1981. "Section 1981 prohibits racial discrimination in the making and enforcement of contracts." *McCormick v. Miami Univ.*, 693 F.3d 654, 659 (6th Cir. 2012). The *McCormick* court goes on to reaffirm the Sixth Circuit's prior holdings that § 1981 cannot be used to sue a state actor in his or her official capacity and further expanded the rule to state that § 1981 also cannot be used to sue a state actor in his or her individual capacity. *Id.* This is so because the Sixth Circuit, in interpreting the

Supreme Court's plurality decision in *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, (1989) and subsequent amendments to the language of § 1981 "came to the conclusion that that the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units; no independent cause of action against municipalities is created by § 1981(c)." *Arendale*, 519 F.3d at 598-99 (internal citations and quotations omitted). As such, the claims in Count II against Defendants Bellant and Hill fail as a matter of law and are hereby DISMISSED.

As to the Count II § 1981 claim against the Commission, as a municipal corporation created by state legislative action, the Commission is a 'state governmental unit." As noted above, in the Sixth Circuit § 1983 is the exclusive remedy for the violation of § 1981 rights by state governmental units. Plaintiff's § 1981 claims against the Commission also must fail as a matter of law.

The Court, therefore, GRANTS Defendants' motion as to Plaintiff's 42 U.S.C. § 1981 claims, and hereby DISMISSES Count II and all claims found therein

### III. CONCLUSION

For the reasons set forth above the Court GRANTS Defendants' motion for summary judgment and DISMISSES Plaintiff's complaint, including all counts therein, with prejudice.

SO ORDERED.

                                        s/Nancy G. Edmunds
                                        Nancy G. Edmunds
                                        United States District Judge

Dated: June 13, 2014

CERTIFICATION

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 13, 2014, by electronic and/or ordinary mail.

                                        s/Carol J. Bethel
                                        Case Manager